J-A22031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CARHEN ENTERPRISES, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CELLINI STUDIOS, LLC | : | No. 303 EDA 2025 |

Appeal from the Judgment Entered February 20, 2025
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2021-16512

BEFORE:  LAZARUS, P.J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED NOVEMBER 7, 2025**

Appellant, Carhen Enterprises, LLC, appeals from the judgment entered on February 20, 2025, in the Court of Common Pleas of Montgomery County in favor of Appellee, Cellini Studios, LLC, in this action to quiet title. After our careful review, we affirm.

The relevant facts and procedural history are as follows: The parties own abutting land in Ambler Borough.  Specifically, Appellant owns property at 27 South Spring Garden Street while Appellee owns property at 113 Poplar Street, which abuts the rear of Appellant's property.  An old stone home containing several apartment units sits on Appellant's property.  The home faces South Spring Garden Street, which allows for street parking; however,

_____

[*] Former Justice specially assigned to the Superior Court.

there is no driveway access to Appellant's property from South Spring Garden Street.

A building from which Appellee operates a karate studio sits on Appellee's property. There is a fifteen-foot-wide driveway along the side of Appellee's property that leads to a parking area behind Appellee's building.

On August 4, 2021, Appellant filed a complaint against Appellee seeking to quiet title as it relates to Appellant's right to use the fifteen-foot-wide driveway for ingress and egress to the rear of Appellant's property. Appellant averred it acquired the property at 27 South Spring Garden Street via a deed dated June 21, 2019, from Nell A. Brosnan a/k/a Nell Richards while Appellee acquired its property at 113 Poplar Street via a deed dated January 8, 2014, from the Trustees FBO Bradley Camburn.[1]

Appellant acknowledged that its June 21, 2019, deed is silent as to the fifteen-foot-wide driveway; however, it contended the deeds of its predecessors provide for an easement over the driveway. Additionally, Appellant claimed a deed in Appellee's chain of title, as well as a subdivision plan, references the driveway. Appellant averred that Appellee has blocked the driveway by stacking wood and cement blocks on it, as well as placing a

---

[1] The Trustees FBO Bradley Camburn are listed on the deed as Carolyn Camburn, Albert Camburn, II, Daniel Camburn, Cynthia Gingerich, and Bradley Camburn.

gate across it. Accordingly, Appellant sought a court order quieting title as to Appellant's right to use the driveway.

On September 29, 2021, Appellee filed an answer with new matter and counterclaims against Appellant. Therein, Appellee indicated there is no easement in Appellant's chain of title reserving or granting any right for it to use the driveway. In its counterclaims, Appellee averred that Appellant has attempted to use the driveway, despite having no legal right or privilege to do so. Thus, Appellee raised four counts in its counterclaim: Count I, invasion of privacy; Count II, trespass; Count III, property damage; and Count IV-quiet title.

On October 19, 2021, Appellant filed an answer with new matter to Appellee's counterclaims.

On September 30, 2024, the matter proceeded to a bench trial. At the beginning of the trial, Appellant's counsel averred "the deeds, old plans, and historical evidence of use of the disputed driveway [has given] legal rights of ingress and egress in and out of [Appellant's] property vis-a-vie the driveway." N.T., 9/30/24, at 4-5.

Appellee's counsel, on the other hand, contended that, in 1959, Winfield Camburn and Alma Camburn purchased the properties currently owned by Appellant and Appellee. *Id.* at 6. In 2022, both properties passed to the estate of Winfield Camburn, and in 2003, Carolyn Camburn, who was an administrator for Winfield Camburn's estate, prepared a lot line adjustment

plan. *Id.* at 7. Appellee's counsel noted the lot line adjustment plan is silent as to any suggestion that there is a driveway or right-of-way in favor of 27 South Spring Garden Street. *Id.* at 8.

In 2004, Appellant's and Appellee's current properties were conveyed separately with 27 South Spring Garden Street being conveyed from the Winfield Camburn estate to Nell A. Brosnan a/k/a Nell Richards, and the property on 113 Poplar Street being conveyed from the Winfield Camburn estate to Trustees FBO Bradley Camburn. *Id.* Appellee's counsel noted both deeds from Winfield Camburn's estate were silent as to any right-of-way or easement relating to 27 South Spring Garden Street's use of the driveway. *Id.* He noted the subsequent deed conveying the 27 South Spring Garden Street property from Nell A. Brosnan a/k/a Nell Richards to Appellant, as well as the subsequent deed conveying the 113 Poplar Street property from the Trustees FBO Bradely Camburn to Appellee, are silent as to any right-of-way or driveway in favor of the 27 South Spring Garden Street property. *Id.*

Moreover, Appellee's counsel contended the following:

> [W]hat is perhaps most telling about [the] lot line adjustment plan and all the legal descriptions that you will see in these deeds…is the fact that [Appellant's] property does not even touch [Appellee's] driveway. The way you'll see in that 2003 lot line adjustment plan that as of…up until 2003, [Appellant's] property, the rear of its property, was separated from [Appellee's] driveway by a gap of about 26 feet. So, in other words, there was a gap—there was a lawn which [Appellee's] predecessors owned, and then ultimately [Appellee] owned, that was located between the rear of [Appellant's] property and [Appellee's] driveway. And then under that lot line adjustment plan, which was in 2003, that gap that exists there was halved but wasn't eliminated. So, even

- 4 -

as we sit here today, the rear of [Appellant's] property still sits 13 feet away from [Appellee's] driveway, which [Appellant is] claiming to have a right-of-way over.

*Id.* at 9.

At this point, the trial court heard testimony from witnesses. Specifically, Lei Barry, the founder of Family Promise, a transitional housing facility for homeless families, confirmed Family Promise owns property on 31 South Spring Garden Street, and this property is "almost attached" to Appellant's property. *Id.* at 16-17. She testified Family Promise purchased its property in the 1980s, and she is familiar with the driveway at issue. *Id.* at 19. Specifically, the driveway runs alongside Appellee's Poplar Street property and, during the 1980s and 1990s, she often saw cars using the driveway to access the rear of Appellant's property on South Spring Garden Street. *Id.*

David A. Dukert testified he owns property at 21 and 23 South Spring Garden Street, and the property was formerly owned by his parents. *Id.* at 26. He indicated that 23 South Spring Garden Street was his childhood home, and he is familiar with the driveway at issue. *Id.* at 26, 33. Mr. Dukert testified the Camburns lived at 27 South Spring Garden Street, and Mr. Camburn operated a welding business out of the building on 113 Poplar Street. *Id.* at 44-45. Mr. Dukert testified he saw the Camburns use the driveway to park their cars behind their house. *Id.* at 34.

On cross-examination, Mr. Dukert testified there was a wrought iron fence that separated 27 and 29 South Spring Garden Street. *Id.* at 46. Also, he indicated there was a wrought iron fence with a gate that went across the driveway on 113 Poplar Street, and the Camburns controlled this gate. *Id.* at 41-42, 49. He indicated the wrought iron fences/gate were installed during the 1970s. *Id.* at 49. He admitted that, when the Camburns owned 113 Poplar Street, he saw them close the gate. *Id.* at 48-49. He indicated that "in the old times…it was always closed[.]" *Id.* at 47. He clarified that by "the old times" he meant when the Camburns owned 27 South Spring Garden Street and 113 Poplar Street. *Id.* at 48.

Maria Angeles[2] testified she created Appellant as an LLC, and its assets include properties in Ambler Borough. She noted Appellant purchased 27 South Spring Garden Street in 2018. *Id.* at 54. While there is street parking for the property, there is no driveway. *Id.* at 55. She noted that the other properties on the street, including 21, 19, and 17 South Spring Garden Street, have their own driveways. *Id.* at 63. Ms. Angeles noted that, when she purchased 27 South Spring Garden Street, the home was vacant, and the rear of the property was overgrown with tall weeds. *Id.* at 56, 64. She testified that she began using the driveway to access the rear of 27 South Spring

_____

[2] Ms. Angeles is also known as Maria Liberatore.

Garden Street, and Appellee's owner began blocking the driveway with cinderblocks, chopped wood, and, ultimately, closed the gate. *Id.* at 67-68.

On cross-examination, Ms. Angeles admitted there was a partial fence along the rear between 27 South Spring Garden Street and the driveway. *Id.* at 69. She hired a company to clear the rear of the property, as well as remove the fence. *Id.* at 70. She was unable to remember whether the area cleared in the rear of her property went all the way to the driveway or stopped short thereof. *Id.* at 72.

Ms. Angeles indicated she purchased the property at 27 South Spring Garden Street within a few days of viewing it, and it was in a proper condition to lease in 2022. *Id.* at 74. She indicated that, when the company she hired began using the driveway to take trucks in and out of the rear of 27 South Spring Garden Street during 2022, Appellee began blocking the driveway. *Id.*

Anthony John Hibbelin, a licensed civil engineer, testified he routinely reviews documents to determine the existence of easements and rights-of-way, as well as creates documents related thereto for new subdivisions. *Id.* at 80. The trial court accepted Mr. Hibbelin as an expert in civil engineering and land use planning. *Id.* at 82.

Mr. Hibbelin testified he was hired to examine documents, including the chain of title to Appellant's and Appellee's properties, to determine whether there is a fifteen-foot-wide private right-of-way that benefits 27 South Spring Garden Street. *Id.* at 83. Regarding Appellant's 2019 deed, Mr. Hibbelin

noted the deed contained language indicating "together with all and singular the improvements, ways, streets, alleys, driveways, passages." *Id.* at 86. Mr. Hibbelin testified Appellant's "deed was written in 2019 referring to the [lot line adjustment plan] in 2003 stating here, 'together with all and singular the improvements, ways, streets, alleys, driveways, passages.'" *Id.* He testified he "wanted to close that loop and find out what this passage specifically showed on the plan of 2003." *Id.*

He testified "together with" referred to the "legal description" defining the property lines of 27 South Spring Garden Street, which was established by the 2003 lot line adjustment plan. *Id.* He opined that following the legal description, the passage adds to the ownership by including, "together with all and singular the improvements, ways, streets, alleys, driveways, passages." *Id.*

He noted two deeds in Appellant's chain of title, including one dated October 18, 2004, and one dated July 31, 2008, describe the property lines for the property by referring to the 2003 lot line adjustment plan, and both deeds also include the "together with" statements. *Id.* at 87. Mr. Hibbelin testified the "together with" language is generally included in deeds where there is some type of access, so he opined it was an important clause to establish accessibility to the driveway in this case. *Id.* at 88.

Regarding the chain of title of Appellee's property, Mr. Hibbelin pointed to a February 23, 1960, recorded indenture defining a transfer of a "very small

parcel containing 0.1325 acres of land between the two parties listed" on Appellee's May 13, 2004, deed, which also refers to the 2003 lot line adjustment plan. *Id.* at 90. He testified the indenture described "on the northerly side of a private right-of-way, 15-foot-wide said point of beginning." *Id.* at 93. He noted the February 23, 1960, indenture refers to a survey plan dated July 3, 1943, which is in Appellee's chain of title. *Id.* at 92.

Additionally, he testified there is a deed dated January 1, 1969, in Appellee's deed of title, and the January 1, 1969, deed refers to the same July 3, 1943, survey plan, as well as the same private right-of-way, fifteen feet in width. *Id.* Moreover, Mr. Hibbelin testified there is a 1973 deed in Appellee's chain of title, which conveyed a 249-square-foot piece of ground from 27 South Spring Garden Street to 113 Poplar Street, which was owned by Winfield Camburn.[3] *Id.* at 94. Mr. Hibbelin testified the 1973 deed refers to a fifteen-foot-wide private right-of-way. *Id.* He testified:

> It's a small portion of [Appellee's] chain of approximately 249 square feet. That small space…at the end specifically calls out that this small 249-square foot piece is entirely—it states its "under and subject to the right of ingress, egress of certain owners of adjacent and nearby properties who thereforeto [*sic*] have been granted a right-of-way over the aforementioned 15-foot-wide private right-of-way."

---

[3] As discussed *infra*, Mr. Hibbelin admitted on cross-examination that he made a mistake in this regard. The 249 square foot piece of property was transferred from 29 South Spring Garden Street to 113 Poplar Street, as opposed to from 27 South Spring Garden Street to 113 Poplar Street. *Id.* at 160.

*Id.* He testified that the 249 square feet area is subject to the 15-foot-wide right-of-way, which runs through it. *Id.* at 95.

Regarding the 1943 survey plan, Mr. Hibbelin noted that several of the deeds in Appellee's chain of title refer to it. *Id.* at 96. He testified the 1943 survey plan shows that when "leaving Poplar Street to the right-hand side of [the] tract and that 15-foot-wide private right-of-way extends from Poplar all the way along the right side not only of the subject tract, but as well as 27 and beyond 27 South Spring Garden Street." *Id.*

Furthermore, Mr. Hibbelin testified a deed dated January 6, 1959, from the executrix of the estate of Helen Kramer to Winfield Camburn and Alma Camburn is in Appellee's and Appellant's chain of title. *Id.* at 99. He noted a plan of property was prepared on September 19, 1939, and the plan showed the large parcel being "divvied up" so that the rear yards of the parcels on South Spring Garden Street were extended, up to and through the actual fifteen-foot right-of-way. *Id.* at 102.

Mr. Hibbelin testified he reviewed the tax maps, the 1939 plan, the 1943 survey plan, and the 1959 deed to determine whether the property at 27 South Spring Garden Street had access to the fifteen-foot right-of-way. *Id.* at 105. He noted that, as of 1959, 27 South Spring Garden Street was a trapezoid extending all the way to Poplar Street, except for the right-of-way. *Id.* He testified ownership of the right-of-way was excepted out of the deeds and plans related to 27 South Spring Garden Street; however, the documents

reserved out the right for 27 South Spring Garden Street to use the right-of-way. *Id.* at 107.

Regarding Appellee's current deed, Mr. Hibbelin agreed there is no language or reference to an old plan regarding the fifteen-foot-wide right-of-way (the driveway at issue). *Id.* at 112. He noted Appellee's January 23, 2014, deed uses an exhibit to describe his property at 113 Poplar Street without reference to the fifteen-foot right-of-way, which was removed from the legal description of the property. *Id.* at 113. However, he noted the deed still used the 2003 lot line adjustment plan, which "physically shows the right-of-way." *Id.* He opined the lot line adjustment plan shows the rear line demarcation for 27 South Spring Garden Street as being moved closer to the dividing line of 113 Poplar Street. *Id.* at 115. He explained the line moved "26.51 feet." *Id.*

He testified that the 2003 lot line adjustment plan references the survey plan dated July 3, 1943. *Id.* at 120. As to the significance of this reference, Mr. Hibbelin opined that the reference to the 1943 survey plan signals that the preparer of the 2003 lot line adjustment plan relied on and used the 1943 survey plan. *Id.* at 122. He indicated the driveway at issue is reflected in the 2003 lot line adjustment plan and called "bituminous driveway." *Id.* He acknowledged that an arrow pointing to the driveway halfway up reads "15-foot-wide private right-of-way. Deed book 3585, Page 518, extinguished by Court No. 95-15725, April 25, 2001." *Id.* He testified he reviewed the right-

of-way referenced in the deed book and the court order, and he concluded the document refers to an easement between Ambler Housing (a property not at issue in this matter) and the Winfield Camburn and Alma Camburn piece (113 Poplar Street), whereby the document extinguishes the easement between the two parties. *Id.* at 123.

Mr. Hibbelin testified that a deed dated January 26, 1970, between Winfield Camburn and Alma Camburn (grantors) and Albert J. McCormick (grantee) notes a "free and uninterrupted use, liberty, and privilege of and passage in and along a certain private right-of-way on that lot or piece of ground being 81.72 feet in length and 15 feet wide." *Id.* at 123-24. At this time, the Camburns owned both 27 South Spring Garden Street and 113 Poplar Street. Mr. Hibbelin testified the Camburns created a right-of-way for Mr. McCormick, who owned 31 South Spring Garden Street.

He testified that, when William Camburn was the owner of 27 South Spring Garden Street and 113 Poplar Street, he filed a civil complaint to quiet title against Ambler Housing, the new possessor of the McCormick property, as to the right-of-way over 113 Poplar Street. *Id.* at 126. The court quieted title and extinguished the right-of-way. *Id.* at 127. Mr. Hibbelin recognized "there's a reference on the 2003 lot line adjustment plan to the extinguishment of an easement." *Id.* at 128. However, as to whether the extinguishment of that easement impacts the owner of 27 South Spring

Garden Street to use the driveway at issue, Mr. Hibbelin opined "the two easements are seemingly overlaying each other on the property." *Id.*

Thus, he opined "the one easement being extinguished between the two parties doesn't necessarily have a bearing on a separate and distinct easement that served other purposes over the same driveway." *Id.* He indicated "parties that were not Ambler Housing would not be affected by whatever happened between Ambler Housing and the easement for themselves." *Id.* at 129.

Mr. Hibbelin indicated that, in a deed dated June 19, 1973, transferring 249 square feet to 113 Poplar Street, language indicates "it consists of a part of a bed of the 15-foot-wide private right-of-way." *Id.* at 130. Thus, he opined "that right-of-way here in 1973 is still being acknowledged. Even in the description before the containing part, they point out the point from which they start is along the northeasterly side of that 15-foot-wide private right-of-way." *Id.* He noted the 1973 deed also indicates the piece is "under and subject to the right of ingress and egress of certain owners of adjacent land and nearby properties who heretofore have been granted a right-of-way over the 15-foot-wide private right-of-way." *Id.* at 131. He opined this language reiterates the existence and purpose of the 15-foot-wide right-of-way. *Id.*

Mr. Hibbelin opined, to a reasonable degree of professional certainty, that 27 South Spring Garden Street enjoys ingress and egress over the 15-foot-wide driveway next to the building at 113 Poplar Street. *Id.* at 133. He

testified he found no document extinguishing the easement for the use of 27 South Spring Garden Street. *Id.*

On cross-examination, Mr. Hibbelin admitted there is no specific reference to a right-of-way over 113 Poplar Street in Appellant's June 21, 2019, deed. *Id.* at 136. He admitted the legal description for 27 South Spring Garden Street as set forth in the June 21, 2019, deed does not include any portion of the driveway on 113 Poplar Street. *Id.* at 139. He admitted the legal description for 27 South Spring Garden Street found in the May 13, 2004, deed between the estate of Winfield Camburn and Nell A. Brosnan a/k/a Nell Richards (the predecessor deed to Appellant's deed), does not include any portion of the driveway on 113 Poplar Street. *Id.* He admitted two prior deeds in Appellant's chain of title do not include any portion of the driveway on 113 Poplar Street in the legal description of the property at 27 South Spring Garden Street. *Id.*

As to the January 23, 2014, deed via which Appellee acquired 113 Poplar Street from Trustee FBO Bradly Camburn, Mr. Hibbelin admitted a portion of the driveway at issue is contained within the legal description of 113 Poplar Street. *Id.* at 142. That is, under the legal description, the driveway runs the entire length of 113 Poplar Street. *Id.* at 143. Moreover, Mr. Hibbelin admitted that the May 13, 2004, deed between the estate of Winfield Camburn and Trustee FBO Bradley Camburn, includes the driveway for 113 Poplar Street within the legal description of the property. *Id.*

Regarding the location of the rear boundary line of 27 South Spring Garden Street, Mr. Hibbelin admitted the "rear property line" does not "abut the actual easement line." *Id.* at 145.  That is, he admitted the rear boundary line of 27 South Spring Garden Street does not physically connect with the 15-foot driveway located on 113 Poplar Street. *Id.* at 146.  He admitted the purpose of the 2003 lot line adjustment plan was to "divide Parcel Z, 480 square feet, from Premises 2 and 3, and to combine with Premises 1." *Id.* at 147.

There is no dispute that 27 South Spring Garden Street is Premise 1 on the 2003 lot line adjustment plan, Premises 2 and 3 combine to make up 113 Poplar Street, and Parcel Z is the piece of property that lies between the rear property line of 27 South Spring Garden Street and the driveway. *Id.* Mr. Hibbelin acknowledged that, just prior to the 2003 lot line adjustment plan, the distance between the rear boundary line of 27 South Spring Garden Street and the driveway was 39.51 feet. *Id.* at 148-49.  That is, the area between the driveway and the rear boundary line of 27 South Spring Garden Street was part of the property of 113 Poplar Street just prior to the 2003 lot line adjustment plan.  *Id.* at 149.

He confirmed the deeds prior to the 2003 lot line adjustment plan memorialized that, up until 2003, there was 40 feet between the rear boundary of 27 South Spring Garden Street and the driveway.  *Id.* at 150. He indicated that, under the 2003 lot line adjustment plan, the distance between

the rear boundary line of 27 South Spring Garden Street and the driveway decreased to 13 feet. *Id.* He agreed that, for whatever reason, a 13-foot gap remains between the rear boundary line of 27 South Spring Garden Street and the driveway, and this 13-foot gap is part of the property belonging to 113 Poplar Street. *Id.* at 151.

Mr. Hibbelin admitted that the 1973 recorded subdivision plan detailing the small, 249-square-foot portion was not conveyed from 27 South Spring Garden Street. *Id.* at 160. Rather, this was conveyed from 29 South Spring Garden Street to 113 Poplar Street. *Id.*

On redirect examination, Mr. Hibbelin testified that the driveway extends past 113 Poplar Street to 25 South Spring Garden Street. However, he noted a 2004 tax map shows the property at 27 South Spring Garden Street also extending to touch the driveway. *Id.* at 170. Mr. Hibbelin testified that no question or information from cross-examination changed his mind that 27 South Spring Garden Street had legal egress and ingress over the driveway. *Id.*

Carl Cellini, the owner of Appellee, confirmed he operates a martial arts studio on 113 Poplar Street. *Id.* at 174. He confirmed that, on behalf of Appellee, he purchased the property in January of 2014, and he testified the deed from Trustees FBO Bradley Camburn to Appellee makes no mention of any easements or rights-of-way in favor of any neighboring properties. *Id.*

at 176. He testified the driveway is fully contained within the legal description of 113 Poplar Street. *Id.*

He testified that, when he bought the property, the rear boundary line of 27 South Spring Garden Street had a fence, which was approximately thirteen feet from the driveway. *Id.* at 177. The fence had a walk-through-size gate. *Id.* at 181. He testified that, between this fence and the driveway, the area was covered with grass. *Id.* at 177. He noted the fence on the boundary line of 27 South Spring Garden Street extended the entire length of the backyard from 25 to 29 South Spring Garden Street. *Id.* at 178. Mr. Cellini testified that, since the fence existed before he purchased 113 Poplar Street, he does not know who installed the fence; however, based on the description in his deed, the fence sat on the boundary line between 113 Poplar Street and 27 South Spring Garden Street. *Id.* at 178, 186.

Mr. Cellini testified that, after he purchased 113 Poplar Street, he paved the grass area between the driveway and the fence on the boundary line of 27 South Spring Garden Street. *Id.* at 182. He indicated that, since he owned this area, he paved it to create a parking area for the karate studio. *Id.* He specifically indicated that, when he paved the grassy area, he did not do so with the intention of creating a right-of-way or easement for any property owner, including 27 South Spring Garden Street, to access the driveway. *Id.* at 190. Mr. Cellini testified that, in retrospect, he wishes he would have planted trees in the grassy area of his property instead of paving it. *Id.*

He noted that he permits the tenants of 25 South Spring Garden Street to use the driveway and one of the parking spaces on 113 Poplar Street; however, he has not given permission to any other neighbor to use the parking area or driveway. *Id.* He noted the agreement between he and the tenant of 25 South Spring Garden Street is memorialized in writing. *Id.* at 193.

Mr. Cellini testified that, when Ms. Angeles purchased the property, he spoke to her husband, who informed Mr. Cellini that they were turning the home on 27 South Spring Garden Street into apartments, and the tenants would be using the driveway on 113 Poplar Street. *Id.* at 194. Mr. Cellini informed him that the driveway was private property, and no one associated with 27 South Spring Garden Street could use the driveway. *Id.*

Mr. Cellini testified that, when he purchased 113 Poplar Street in January of 2014, Margaret Hammett, who was related to Winfield Camburn, lived at 25 South Spring Garden Street while Nell A. Brosnan a/k/a Nell Richards lived at 27 South Spring Garden Street. *Id.* at 200.

Margaret Hammett[4] confirmed she used to live at 25 South Spring Garden Street; however, she moved to Georgia in 2017. Margaret Hammett Deposition, dated 9/26/24, at 7. Ms. Hammett testified that, when she was a child, her aunt owned 25 South Spring Garden Street while her grandfather, Winfield Camburn, owned 27 South Spring Garden Street. *Id.* at 8. Ms.

---

[4] The parties agreed to submit the deposition testimony of Ms. Hammett, which was taken via Zoom, in lieu of live testimony during trial.

Hammett purchased 25 South Spring Garden Street on July 31, 2008, and she lived there until 2017. *Id.* at 9. During this time, her mother, Nell A. Brosnan a/k/a Nell Richards, lived at 27 South Spring Garden Street, and her cousin owned 113 Poplar Street. *Id.* at 10, 12.

Ms. Hammett testified that, when she bought 25 South Spring Garden Street, the rear boundary contained a chain link fence, and she installed a wooden fence in its place. *Id.* at 14. She testified that her mother's house at 27 South Spring Garden Street did not have a fence in the rear in 2008; however, her mother subsequently installed a fence in the rear of 27 South Spring Garden Street so that she could contain her dogs when they were outside. *Id.* at 15.

Ms. Hammett testified that, when her cousin owned 113 Poplar Street, she and her mother used the driveway and parked "back there" because her cousin said they were allowed to do so. *Id.* at 16. When Mr. Cellini purchased 113 Poplar Street, he initially asked them to stop using the driveway and parking on 113 Poplar Street; however, he then indicated they could park one car on his property. *Id.* Accordingly, Ms. Hammett testified she used the driveway and parked her car on 113 Poplar Street while her mother parked her car on the street. *Id.* Ms. Hammett testified that she did not believe she or her mother had a legal right to use the driveway or park on 113 Poplar Street, so they always asked for permission. *Id.*

On cross-examination, Ms. Hammett testified that, at one time, her grandfather owned 27 South Spring Garden Street and 113 Poplar Street. *Id.* at 22. During this time, her grandfather used the driveway on 113 Poplar Street to access 27 South Spring Garden Street. *Id.*

William Foley testified he was in the Ambler Borough police department from 1976 to 2018. N.T., 10/1/24, at 7. He testified that he generally observed only cars related to 113 Poplar Street parking on the property. *Id.*

Anne Anastasi testified she works for True Management Corporation, a subsidiary of Republic National Title, which assists title insurance agencies with understanding the federal Real Estate Settlement Procedures Act. *Id.* at 22. Ms. Anastasi testified she is tasked with examining title evidence to determine insurability, to determine exceptions, and to resolve issues regarding title insurance for properties. *Id.* at 23. She testified she is also the founder of Genesis Abstract, which is a title insurance agency under True Management Corporation. *Id.* at 24. The trial court accepted Ms. Anastasi as an expert in title insurance and title examination. *Id.*

Ms. Anastasi testified she examined deeds, plans, and other documents in this case, and based thereon, it was her professional opinion that 27 South Spring Garden Street does not have the right to use the driveway on 113 Poplar Street. *Id.* at 29. Ms. Anastasi testified her opinion is based on two points: (1) that a 15-feet by 81.72-feet right-of-way was created on 113 Poplar Street in 1970; however, the right-of-way was then extinguished, and

(2) even if not extinguished, the boundary line of 27 South Spring Garden Street never adjoined the fifteen-foot driveway. *Id.* at 31-32.

Ms. Anastasi testified that, in 1970, Albert J. McCormick was the record title holder of 31 South Spring Garden Street. *Id.* Via a deed dated January 26, 1970, Winfield Camburn and Alma Camburn conveyed to Mr. McCormick a parcel 60 feet wide and 81.72 feet long, and in a separate document, within this parcel, they established a right-of-way that was 15 feet wide and 81.72 feet long. *Id.* The Camburns retained ownership of the 15-feet by 81.72-feet right-of-way, but they granted Mr. McCormick a right-of-way for use. *Id.* at 34. Ms. Anastasi noted the right-of-way was wholly contained within the legal description of 113 Poplar Street, and it ran on the northwesterly side of 113 Poplar Street. *Id.*

The 1970 right-of-way document indicated the right-of-way was for Mr. McCormick "his heirs and assigns and his and their tenants and under-tenants, occupiers, or possessors of the said [McCormick's] messuage and *ground contiguous* to the said right of way at all times and season forever hereafter, into, along, upon and out of said right of right of way[.]" Anne Anastasi Report, dated 6/30/23, at 4 (emphasis in original). Ms. Anastasi opined the right-of-way document granted rights only to Mr. McCormick (his heirs and assigns etc.) and reserved the ownership of the right-of-way to the Camburns (their heirs and assigns etc.), as well as those with ground contiguous to the 81.72 feet long and 15 feet wide right-of-way. *Id.* At this time, no boundary of 27

South Spring Garden Street was contiguous to the right-of-way. N.T., 10/1/24, at 34.

She noted that, in 1995, Winfield Camburn filed a civil action to quiet title against Ambler Housing, which was at that time the owner of 31 South Spring Garden Street, as to the right-of-way. *Id.* at 36. Mr. Camburn sought to extinguish the use of the right-of-way that had been created by the 1970 right-of-way agreement and cancel those rights by reason of adverse possession. *Id.* On April 25, 2001, the court extinguished forever the right-of-way by reason of adverse possession and quieted title in favor of Mr. Camburn. *Id.* Ms. Anastasi opined the 2001 court order forever extinguished the right-of-way created previously by the 1970 right-of-way document. *Id.*

Ms. Anastasi testified that, thereafter, in 2003, Carolyn Camburn, who was an administrator for Winfield Camburn's estate, hired Charles E. Shoemaker, Inc., to prepare a lot line adjustment plan. *Id.* at 37. She indicated the 2003 lot line adjustment plan "shows the boundary lines of the 15 by 81.7-foot right-of-way on the plan, but there is a note on the plan that it had been extinguished, the right-of-way had been extinguished." *Id.* The note on the plan references the April 25, 2001, court extinguishment order. *Id.* at 38.

She noted the 2003 lot line adjustment plan moved the rear property line of 27 South Spring Garden Street. *Id.* Specifically, Ms. Anastasi testified that, once the 2003 lot line adjustment plan was filed, there was a 13-foot

gap between the rear boundary line of 27 South Spring Garden Street and the driveway at issue. *Id.* at 40. That is, no boundary line of 27 South Spring Garden Street was contiguous to the driveway before or after the 2003 lot line adjustment plan. *Id.* at 40-41. She noted the legal description of the metes and bounds in the deed for 27 South Spring Garden Street does not include the driveway, and no right-of-way is provided in the deed. *Id.* at 41. She noted the driveway is included in the legal description of the metes and bounds for 113 Poplar Street. *Id.*

Ms. Anastasi testified that, after the filing of the 2003 lot line adjustment plan, there are four deeds in Appellant's chain of title, and two deeds in Appellee's chain of title. *Id.* at 42. She indicated that none of these four deeds in Appellant's chain of title for 27 South Spring Garden Street included the driveway in the legal description of the property. *Id.* She noted the two deeds in Appellee's chain of title for 113 Poplar Street included the driveway within the legal description of the property, and there is no indication in the deeds that 113 Poplar Street is burdened by a right-of-way. *Id.* at 43.

Ms. Anastasi acknowledged that Appellant's 2019 deed includes language indicating "together with all and singular the improvements, ways, streets, alleys, driveways, passages." *Id.* at 86. She noted Mr. Hibbelin testified the "together with" referred to the "legal description" defining the property lines of 27 South Spring Garden Street, which was established by the 2003 lot line adjustment plan. *Id.* at 43. She noted Mr. Hibbelin opined that

following the legal description, the passage adds to the ownership of 27 South Spring Garden Street by including, "together with all and singular the improvements, ways, streets, alleys, driveways, passages." *Id.*

However, Ms. Anastasi testified she disagrees with Mr. Hibbelin's interpretation of the "together with" language in Appellant's 2019 deed. *Id.* She noted that this is boilerplate language that "is in 99 percent of the deeds that [she has] examined in [her] 40 years [of her professional career.]" *Id.* She noted "not every property has alleyways or watercourses," but the "together with" language is still included in most deeds. *Id.* She claimed that, in the industry, the "together with" language means that, in addition to the legal description of the property, out of all of the possibilities listed in the "together with" language, if the grantor owned it or had a right to it, the grantee gets it. *Id.* at 44.

Ms. Anastasi specifically opined that, just because the "together with" language is included in Appellant's 2019 deed for 27 South Spring Garden Street, does not result in the conclusion that there is, in fact, a right-of-way associated with the property. *Id.* at 45. She opined that the "together with" language can't bind to the property something that does not exist in the first place. *Id.*

Ms. Anastasi opined, to a reasonable degree of professional certainty, the following:

> Remembering that I'm at this point examining the 1970 right-of-way, I concluded that, first of all, the right-of-way had

been extinguished by court order, that 27 South Spring Garden [Street] did not adjoin that right-of-way by location and dimension, and that the language, the boilerplate language [of "together with"] did not guarantee or grant use of the existence of [the] right-of-way.

*Id.* at 46.

She noted that the legal description of the metes and bounds provided in the 2019 deed to Appellant from Nell A. Brosnan a/k/a Nell Richards reveals no boundary line of 27 South Spring Garden Street adjoins the driveway. *Id.*

Ms. Anastasi noted she examined the title insurance issued for Appellant for 27 South Spring Garden Street. *Id.* at 48. She noted Appellant used a reputable title insurance company, Trident Land Title. *Id.* On the title policy, in the "exceptions list," there was a notation referencing the 2003 lot line adjustment plan. *Id.* The notation indicated 27 South Spring Garden Street "was being purchased subject to building setback lines and notes as shown on the plan." *Id.* However, she indicated "the plan did not mention an easement or right-of-way of any sort. And remember that plan also showed that there was an extinguishment of a right-of-way." *Id.* at 48-49. She noted that she and Trident Land Title came to the same conclusion: there is no right-of-way or driveway use for 27 South Spring Garden Street. *Id.* at 49.

Ms. Anastasi testified that, in addition to her first report and findings indicated *supra*, she filed a second report wherein she discussed Appellant's and Appellee's chains of title prior to the creation of the 1970 right-of-way. *Id.* at 51. Ms. Anastasi testified that, after reviewing the chains of title prior

to 1970, she arrived at the same conclusion: 27 South Spring Garden Street had no right to use the driveway. *Id.* at 52-53.

In this vein, she noted she traced the chain of title for 113 Poplar Street back to 1877. *Id.* at 53. From 1877 to 1942, "there is no mention whatsoever of a right-of-way in the metes and bounds descriptions" of the deeds. *Id.* However, she found a right-of-way agreement executed in 1939 between James Palermo and Albert Kramer, and the right-of-way agreement was related to the exact area at issue (the driveway) in this case. *Id.* at 54. That is, Mr. Palermo leased the 60-foot garage property on Poplar Street, and Mr. Kramer owned 25 South Spring Garden Street. *Id.* at 55.

She testified:

> The agreement was between the two of them for Mr. Kramer to access the 15-foot-wide area down to Poplar Street across the garage property. In the agreement, Mr. Palermo mentioned he had an option to buy. And he said it says in the agreement that if, in fact, he exercised the option to buy, he would memorialize the right to use the agreement, and it would then extend—the use would then be memorialized, and the right-of-way would then be itself recorded.

*Id.*

However, she found no evidence the agreement was ever recorded. *Id.* at 56. In any event, the right-of-way agreement was not for the benefit of 27 South Spring Garden Street; but rather, the right-of-way agreement was for the benefit of 25 South Spring Garden Street. *Id.* at 55. Ms. Anastasi testified "the right-of-way actually extended into the land of 25 South Spring Garden [Street]." *Id.*

- 26 -

Regarding a 1959 deed, which labeled 27 South Spring Garden Street as two parcels, Ms. Anastasi noted that Mr. Hibbelin opined that, based on the 1959 deed, the right-of-way "actually is on 27 South Spring Garden [Street]." *Id.* at 58. She noted the right-of-way "actually is running on the parcel that comes off of Poplar [Street]," which is not 27 South Spring Garden Street. *Id.* She opined the 1959 deed may have mislabeled the two parcels as one parcel (27 South Spring Garden Street) because the parcel burdened by the right-of-way actually fronts Poplar Street, which 27 South Spring Garden Street does not. *Id.* at 59.

Ms. Anastasi opined:

The 1939 right-of-way agreement between Mr. Kramer and [Mr.] Palermo was written to benefit 25 South Spring Garden [Street], because the right-of-way actually extends into 25 South Spring Garden [Street]. The current 27 South Spring Garden [Street] does not abut in any way where we believe the 15-foot-wide driveway right-of-way exists. So, my conclusion is that 27 does not have the right to use [the driveway] because it does not abut the right-of-way as it exists today.

*Id.* at 60.

She noted that, from her review of all documents, the 1939 agreement called for the right-of-way to be recorded; however, she found no evidence that this occurred. *Id.* Even if it was recorded, she noted the 1939 agreement provided a right-of-way for land adjoining the right-of-way, and 27 South Spring Garden Street did not then or now adjoin the right-of-way. *Id.* at 61. Also, while her review discovered a right-of-way was created in 1970 for Mr. McCormick and properties "contiguous" to the right-of-way, 27 South Spring

Garden Street was not "contiguous" to the right-of-way. *Id.* In any event, the 1970 right-of-way was extinguished by court order in 2001. *Id.* Her review revealed no right-of-way regarding the driveway burdened 113 Poplar Street after the trial court's 2001 extinguishment order. *Id.*

Ms. Anastasi concluded her direct testimony by pointing out that the tax map of the properties at issue shows 27 South Spring Garden Street with its current rear boundary line "short of the right-of-way." *Id.* at 62.

On cross-examination, Ms. Anastasi acknowledged the boundary lines for 27 South Spring Garden Street have changed several times over the years, and at one point, the rear boundary of 27 South Spring Garden Street was closer to the driveway than it is currently. *Id.* at 65.

On December 12, 2024, the trial court filed it Decision quieting title of the driveway in favor of Appellee. The trial court found 27 South Spring Garden Street does not have a right to use the private driveway on 113 Poplar Street. *See* Trial Court Decision, filed 12/12/24, at 1-3.

On December 20, 2024, Appellant filed a timely post-sentence motion claiming the trial court's Decision is not supported by the evidence and/or is against the weight of the evidence. Appellee filed an answer in opposition thereto, and by order filed on December 31, 2024, the trial court denied Appellant's post-trial motion.

On January 8, 2025, the parties filed a stipulation indicating that Appellee's counterclaims, except Count IV to quiet title, were dismissed with

prejudice. On January 14, 2025, Appellant filed a praecipe for the entry of judgment in favor of Appellee as to Appellant's complaint and Appellee's counterclaim to quiet title. On January 15, 2025, Appellant filed a notice of appeal.[5] All Pennsylvania Rules of Appellate Procedure 1925 have been adequately met.

On appeal, Appellant sets forth the following issue in its "Statement of Questions Presented" (verbatim):

1. Whether the trial court erred by not recognizing that Appellant has access over the disputed driveway by way of an easement by implication, which easement has never been extinguished.

Appellant's Brief at 4 (suggested answer omitted).

It is well-settled that an easement may be created by express agreement, by implication, by necessity, or by prescription. ***Morning Call, Inc. v. Bell Atlantic-Pennsylvania, Inc.***, 761 A.2d 139, 142 (Pa.Super. 2000); ***Phillippi v. Knotter***, 748 A.2d 757, 758 (Pa.Super. 2000).

---

[5] On February 5, 2025, the trial court filed an order approving and adopting the parties' stipulation dismissing Counts I, II, and III in Appellee's counterclaim with prejudice. Further, based on the trial court's order accepting the parties' stipulation, on February 20, 2025, Appellee filed a praecipe for the entry of judgment in favor of Appellant on Counts I, II, and III of Appellee's counterclaim. We conclude the judgment entered on February 20, 2025, constitutes the final order in this case. ***See*** Pa.R.A.P. 341. Thus, although Appellant's notice of appeal was premature, for considerations of judicial economy, we shall "regard as done that which ought to have been done." ***Franciscus v. Sevdik***, 135 A.3d 1092, 1093 n.2 (Pa.Super. 2016) (quotation and quotation marks omitted).

In the case *sub judice*, Appellant acknowledges neither its deed nor Appellee's deed explicitly provides for 27 South Spring Garden Street to use a right-of-way over 113 Poplar Street, upon which the driveway is located. Moreover, Appellant presents no argument that it is entitled to use the driveway by necessity or by prescription. However, Appellant contends the trial court erred in failing to recognize that Appellant has access over the driveway by way of an easement by implication.

Specifically, Appellant contends that plans from 1939 and 1943, "dating back more than eighty (80) years, show [27 South Spring Garden Street] benefiting from a right-of-way over the disputed driveway in order to access the rear of the property." Appellant's Brief at 22. Appellant claims the plans creating the right-of-way were specifically noted in deeds in the parties' chain of title, as was the existence of the right-of-way itself, and the historical use of the driveway was such that properties adjacent to 113 Poplar Street, including the owners of 27 South Spring Garden Street, used the driveway to access the rear of their properties. *See id.* at 22-23. Appellant contends the right-of-way for 27 South Spring Garden Street to use the driveway was never extinguished. *Id.* at 29. Accordingly, Appellant contends Appellee took title of 113 Poplar Street with constructive notice of the recorded documents in its chain of title, and with notice of a visible driveway on its property. *See id.* at 23.

Assuming, *arguendo*, the 1939 and 1943 plans created in implied easement for 27 South Spring Garden Street to use the private driveway on 113 Poplar Street, we conclude that such implied easement was extinguished when Winfield Camburn and Alma Camburn took ownership and possession of both properties (no later than 1973). Moreover, we hold there is no evidence an implied easement for 27 South Spring Garden Street to use the private driveway on 113 Poplar Street was revived, reinstated, or newly created thereafter.

We begin by recognizing:

> Our appellate role in cases arising from non-jury [matters] is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary.

***Metro Real Estate Investment, LLC v. Bembry***, 207 A.3d 336, 339 (Pa.Super. 2019) (citations omitted). The "credibility of witnesses is an issue to be determined by the trier of fact. On appeal, this Court will not revisit the trial court's determinations regarding the credibility of the parties." ***Garwood v. Ameriprise Financial, Inc.***, 240 A.3d 945, 948 (Pa.Super. 2020) (citation omitted).

"An action to quiet title is designed to resolve a dispute over the title to real estate of which the plaintiff is in possession. The plaintiff bringing a quiet title action has the burden of proof and must recover on the strength of its own title." *Woodhouse Hunting Club, Inc. v. Hoyt*, 183 A.3d 453, 457 (Pa.Super. 2018) (citations omitted).

An easement is "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." *Stanton v. Lackawanna Energy, Ltd.*, 584 Pa. 550, 886 A.2d 667, 676 n.7 (2005) (citation omitted).

Initially, Appellant contends that plans from 1939 and 1943, "dating back more than eighty (80) years, show [27 South Spring Garden Street] benefiting from a right-of-way over the disputed driveway in order to access the rear of the property." Appellant's Brief at 22.

Assuming, *arguendo*, the plans created an easement by implication, we conclude that, as of 1973, when Winfield Camburn and Alma Camburn (and then later Mr. Winfield's estate) owned and possessed the entirety of 27 South Spring Garden Street and 113 Poplar Street,[6] any easement by implication

_____

[6] The record demonstrates that, as of 1973, when Winfield Camburn and Alma Camburn purchased the 249 square foot portion from 29 South Spring Garden Street, they owned all of the land comprising present day 27 South Spring Garden Street and 113 Poplar Street. That is, the two properties at issue had a common owner as of 1973. Moreover, the Camburns possessed the properties in that they lived in the house on 27 South Spring Garden Street, and Mr. Camburn operated a garage on 113 Poplar Street.

regarding the driveway was extinguished by merger of title. *See Obringer v. Minnotte Bros.*, 352 Pa. 188, 42 A.2d 413 (1945) (where owner of servient tenement acquires title to the dominant tenement for the benefit of which easement was created such merger of title extinguishes easement since people cannot have an easement over their own land).   As our Supreme Court has explained, "a right-of-way never exists when a man can get to his own property through his own land[.]" *Bartowksi v. Ramondo*, 656 Pa. 51, 219 A.3d 1083, 1092 (2019).

However, this does not end our inquiry as we must determine whether, upon severance of the unity of ownership in 27 South Spring Garden Street and 113 Poplar Street, an easement by implication was created.   *See Gurecka v. Carroll*, 155 A.3d 1071 (Pa.Super. 2017) (*en banc*).   Appellant asserts the record and trial testimony established there has been such continuous and obvious use of the historical driveway for the benefit of 27 South Spring Garden Road before the separation of title to show an intention to make the use of the historical driveway permanent.

To establish an easement by implication upon severance of title, a party must establish: (1) a separation of title; (2) prior to the separation, the use giving rise to the easement was "so long continued, and so obvious or manifest, as to show that it was meant to be permanent"; (3) the easement is "necessary to the beneficial enjoyment of the land granted or retained[;]" and (4) "the servitude shall be continuous and self-acting, as distinguished

from discontinuous and used only from time to time." *Id.* at 1076 (citations omitted) (emphasis removed).

This test coexists in Pennsylvania with the test enunciated in Section 476 of the Restatement (First) of Property, "which emphasizes a balancing approach, designed to ascertain the actual or implied intention of the parties. No single factor under the Restatement approach is dispositive." *Id*. (citation omitted).

In *Bucciarelli v. DeLisa*, 547 Pa. 431, 691 A.2d 446, 448 (1997), our Supreme Court stated that one of several factors to consider in determining whether an easement by implication exists is

> [t]he effect of the prior use as a circumstance in implying, upon a severance of possession by conveyance, an easement [resulting] from an inference as to the intention of the parties. To draw such an inference[,] the prior use must have been known to the parties at the time of the conveyance, or, at least, have been within the possibility of their knowledge at that time. Each party to a conveyance is bound not merely to what he intended, but also to what he might reasonably have foreseen the other party to the conveyance expected. Parties to a conveyance may, therefore, be assumed to intend the continuance of uses known to them which are in considerable degree necessary to the continued usefulness of the land. Also, they will be assumed to know and to contemplate the continuance of reasonably necessary uses which have so altered the premises as to make them apparent upon reasonably prudent investigation.

*Id.* at 448 (*citing* Restatement (First) of Property § 476, Comment j (1944)).

We presume parties to a conveyance expect and intend knowable and reasonably foreseeable prior uses of the land to continue after the conveyance. *See Bucciarelli*, *supra*.

Relevantly, in analyzing the applicable legal precepts, the trial court began with whether, prior to the severance of title, the Camburns' use of the driveway in relation to 27 South Spring Garden Street was "so long continued, and so obvious or manifest, as to show that it was meant to be permanent." **Carroll**, 155 A.3d at 1076 (quotation omitted). According to the testimony of Appellant's witness, David A. Dukert, who spent his childhood living at 23 South Spring Garden Street, during the 1970s, the Camburns installed a wrought iron fence and gate, which ran across the driveway on 113 Poplar Street. N.T., 9/30/24, at 41-42, 49. The Camburns controlled the gate and often closed it. **Id.** at 47. This wrought iron fence and gate still exist on 113 Poplar Street, and there is no dispute Appellee has closed it to block Appellant from using the driveway.

Simply put, during the period of common ownership by the Camburns, before the separation of title took place, the unfettered use of the driveway to access 27 South Spring Garden Street was not "so long continued, and so obvious or manifest as to show that it was meant to be permanent." **Carroll**, 155 A.3d at 1076 (quotation omitted). Even if the Camburns used the driveway to access 27 South Spring Garden Street when they owned both properties, their erection of a fence and gate across the driveway on 113 Poplar Street sent the message that the owners of 113 Poplar Street could close it to block access. **See id.** That is, the Camburns' closing of the gate rendered the use of the driveway "discontinuous and used only from time to

- 35 -

time." *Id.* at 1076. In fact, during the mid-1990s, Mr. Camburn successfully brought an action to quiet title against Ambler Housing, the owner of 31 South Spring Garden Street, to extinguish a right-of-way as to the driveway.

Moreover, following Alma Camburn's death in 1980, and then Winfield Camburn's death in 2002, Winfield Camburn's estate, which owned and possessed both properties, reconfigured the property lines for 27 South Spring Garden Street and 113 Poplar Street, as memorialized in a 2003 lot line adjustment plan. This plan labels the "bituminous driveway." Appellant's expert acknowledged that an arrow pointing to the driveway halfway up reads "15-foot-wide private right-of-way. Deed book 3585, Page 518, extinguished by Court No. 95-15725, April 25, 2001." N.T., 9/30/24, at 123.

Also, although the estate reconfigured the boundary lines between 113 Poplar Street and 27 South Spring Garden Street, the estate did not draw the lines so that the boundary line of 27 South Spring Garden Street touched the driveway. Further, the estate made no mention on the 2003 lot line adjustment plan of a right-of-way or easement for 27 South Spring Garden Street to use the driveway, and there is a notation that 27 South Spring Garden Street has "0 Off-Street" parking spaces.

Moreover, relevantly, the estate did not remove the wrought iron fence and gate, which may be used to block the driveway on 113 Poplar Street to the present day. Thus, the clear intention of the Camburn estate was that, upon separation of title, the control of the driveway would belong to the

- 36 -

eventual new owner/possessor of 113 Poplar Street. Stated differently, the estate's clear intention was that the eventual new owner/possessor of 27 South Spring Garden Street could not reasonably rely on being able to use the driveway. **Bucciarelli**, **supra** (holding easement by implication requires an inference as to the intention of the parties at time of severance of the unity of title, and the easement must be of such a character as to enable the claimant to rely reasonably upon the continuance of such use).

Following the recording of the 2003 lot line adjustment plan, there was a separation of title. **See Carroll**, **supra**. Specifically, in 2004, Winfield Camburn's estate transferred 113 Poplar Street to the Trustees FBO Bradley Camburn, which then transferred the property to Appellee in 2014. In 2004, Winfield Camburn's estate transferred 27 South Spring Garden Street to Nell A. Brosnan a/k/a Nell Richards, who then transferred the property to Appellant in 2018.

The daughter of Ms. Brosnan/Richards, Margaret Hammett, testified she lived at 25 South Spring Garden Street, next to her mother, from 2008 to 2017. Margaret Hammett Deposition, dated 9/26/24, at 3-5. There is no dispute that she testified that neither she nor her mother believed they had the right to use the driveway on 113 Poplar Street, and they always asked permission from the owner of 113 Poplar Street (*i.e.*, her cousin and then Appellee) to do so. *Id.* at 16. She noted that Appellee gave her permission to use the driveway and park on the lot of 113 Poplar Street, but he did not

give permission to her mother (who lived at 27 South Spring Garden Street). *Id.* Accordingly, her mother did not use the driveway or park on the lot of 113 Poplar Street after Appellee purchased the property. *Id.* This further supports the trial court's conclusion that the use of the driveway by 27 South Spring Garden Street was not permanent, and further, it was not reasonable for Appellant to foresee being able to use the driveway. *See Bucciarelli*, *supra*.

Additionally, while Appellant's use of the driveway would be convenient, it is not "necessary to the beneficial enjoyment of the land granted or retained." *Carroll*, 155 A.3d at 1076 (quotation omitted).

Finally, in determining whether an easement by implication was created at the time of severance of title and whether Appellant had actual notice of the existence of an easement when she purchased 27 South Spring Garden Street, we conclude the trial court did not err in holding Appellee's property is not "subject to an open, visible, and permanent easement." *Carroll*, 155 A.3d at 1078 (quotation omitted). As the trial court found, "[a]bsent a quick look at the physical property two days prior to purchase, it does not appear that [Appellant] conducted any due diligence." Trial Court Opinion, filed 12/12/24, at 3. Further, by Appellant's own admission, when she purchased 27 South Spring Garden Street, the boundaries of 27 South Spring Garden Street and 113 Poplar Street were separated by a fence and very tall weeds. Given the area was not cleared or otherwise gave any indication the previous owners of

27 South Spring Garden Street were parking on the rear of the property or accessing it via the driveway, we agree with the trial court that there is no evidence Appellant had actual notice, or otherwise should have believed, she had a legal right to use the driveway at issue. *See Bucciarelli*, *supra*; Restatement (First) of Property § 476 (1944).

For all of the foregoing reasons, we conclude the trial court did not err in holding there was no easement by implication created for Appellant to use Appellee's private driveway to access the rear of 27 South Spring Garden Street. Accordingly, the trial court properly quieted titled in favor of Appellee, and we affirm the judgment.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/7/2025